UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PEERLESS INDEMNITY INSURANCE COMPANY & PEERLESS INSURANCE CO., <br><br>      Plaintiffs, <br><br> v. <br><br> ROBBIN W. FROST, <br><br>      Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Docket no. 2:12-cv-43-GZS |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are cross-motions for summary judgment filed by Defendant/Counterclaimant Robbin Frost ("Frost") (ECF No. 17) and Plaintiffs Peerless Indemnity Insurance Company and Peerless Insurance Company (together, "Peerless") (ECF No. 20). As explained herein, the Court DENIES Defendant's Motion (ECF No. 17) and GRANTS Plaintiffs' Motion (ECF No. 20).

**I.    LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at

248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

The above-described "standard is not affected by the presence of cross-motions for summary judgment." Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005)

(citation omitted). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citing Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996)); see also Alliance of Auto. Mfrs., 430 F.3d at 34 ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof.").

## II.  FACTUAL BACKGROUND

Construing the record in accordance with the just-described standard, the Court finds the following undisputed facts:[1]

Robbin W. Frost, D.P.M., is a resident of Windham, Maine. At all times relevant to the present claims, Frost was a licensed doctor of podiatric medicine and was operating a podiatric medical and surgical practice under the name Lake Region Family Foot and Ankle Center, P.A. ("Lake Region Center"). In addition to Dr. Frost, the Lake Region Center had four other employees. Frost was the sole shareholder, sole director, and sole executive officer of Lake Region Center, a Maine professional association, which was established in 1995. Lake Region Center never owned or leased any vehicles. Rather, Dr. Frost and employees of Lake Region Center used their personal vehicles to the extent that the podiatry practice required travel.

On or about May 25, 2007, Dr. Frost was en route from her surgical practice office in Windham to the Mercy Hospital in Portland, Maine to perform several scheduled podiatric surgical procedures. She was operating a motor vehicle in a generally easterly direction on Route 202, in Gray, Maine. Dr. Frost was stopped at a traffic light, behind her was another

---

[1] The Court notes that this recitation ignores entirely the factual assertions regarding representations made by Jeffrey Vernette in connection with the purchase of the Peerless policies. (See Affidavit of Robin Frost (ECF No. 26-1/27-1) ¶¶10-13.) These factual assertions were withdrawn pursuant to the parties' Joint Stipulation (ECF No. 29). The Court notes that this convoluted presentation of the factual record was not a model of clarity and reflects an unnecessary departure from the customized briefing schedule created via the Local Rule 56H proceedings (ECF Nos. 11-15).

stopped vehicle operated by Kevin Boudle. Brandon Lapointe was operating a vehicle in the same direction on Route 202 and caused his vehicle to strike the rear of Kevin Boudle's vehicle which, in turn, drove the front of Boudle's vehicle violently into the rear of Frost's vehicle. Frost sustained severe injuries as a result of this collision. For purposes of summary judgment only, the parties agree that the damages suffered by Frost in the collision exceed $1,250,000.00.

The collision described above and the injuries to Frost were directly and proximately caused solely by the negligence of Brandon Lapointe, which negligence included, but was not limited to: failure to keep a proper look out; failure to operate his vehicle at a prudent and safe speed; failure to control his vehicle; and failure to observe and obey a traffic control device. At the time of this May 2007 collision, Brandon Lapointe was covered by an automobile liability policy issued by AIU Insurance Company providing combined bodily injury and property damage coverage in the amount of $125,000 per accident. Dr. Frost was covered by an automobile policy underwritten by Progressive Northwestern Insurance Company, which included uninsured/underinsured motorist coverage in the amount of $250,000 per person.

To date, Frost has collected $250,000 on her claims related to the May 2007 collision. First, Frost settled her claims with Lapointe's insurer (AIU Insurance Company) for $99,745.98, which represented the full amount remaining of the combined bodily injury and property damage limit after payment by AIU Insurance Company of a claim made by Kevin Boudle. Second, Dr. Frost settled her claims with her own automobile insurer (Progressive Northwestern Insurance Company) for $150,254.02, which represented the full available limits of the uninsured/underinsured motorist coverage reduced by the offset required by the terms of the policy for the liability payment from AIU Insurance Company.[2]

---

[2] These settlements with AIU Insurance Company and Progressive Northwestern Insurance Company were reached with the knowledge and permission of Plaintiffs.

In the present action, Dr. Frost seeks to recover her remaining damages from two policies issued by Plaintiffs. First, an insurance policy issued by the Plaintiff Peerless Indemnity Insurance Company to Lake Region Family Foot and Ankle Center, P.A., under Policy No. BOP8262829. This policy was effective from May 1, 2007 to May 8, 2007. A copy of this 136-page policy (ECF No. 16-1) was filed as part of the joint record on summary judgment. Second, a commercial umbrella liability policy in the amount of an additional $1,000,000 issued by Plaintiff Peerless Insurance Company to Lake Region Family Foot and Ankle Center, P.A., under Policy No. CU8263929, which was similarly in full force and effect at the time of the May 2007 collision. A copy of this 56-page policy (ECF No. 16-2) was filed as part of the joint record on summary judgment. While Frost has made a demand for payment of underinsured motorist benefits under both of these policies, Peerless has refused to pay on the sole ground that neither policy provides any uninsured/underinsured motorist coverage. Rather, Peerless maintains that uninsured/underinsured motorist coverage is not included under the language of either the policy, nor can such coverage be deemed to exist by operation of Maine law.

## III. DISCUSSION

### A. Applicable Maine Law

Maine statute specifically requires that certain insurance policies include uninsured and underinsured vehicle coverage by default. In relevant part, the statute reads:

> A policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may not be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided in the policy or supplemental to the policy for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage required by this section may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured

5

motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

24-A M.R.S.A. § 2902(1). "[T]he amount of coverage to be so provided may not be less than the amount of coverage for liability for bodily injury or death in the policy offered or sold to a purchaser unless the purchaser expressly rejects such an amount." 24-A M.R.S.A. § 2902(2).[3] To the extent that any policy fails to explicitly include the uninsured/underinsured coverage as required under section 2902, the statutory coverage is nonetheless deemed included as a matter of law. See Wescott v. Allstate Ins., 397 A.2d 156, 166 (Me. 1979).

The Law Court has previously instructed that any ambiguity in the language of section 2902 "is to be resolved in favor of injured insureds." Molleur v. Dairyland Ins. Co., 942 A.2d 1197, 1201 (Me. 2008). Most recently, the Law Court explained that the legislative purpose of section 2902 in Beal v. Allstate Ins. Co., 989 A.2d 733 (Me. 2010). In relevant part, the Law Court explained:

> We have previously held that the legislative purpose of section 2902 was to allow an injured insured the same recovery which would have been available ... had the tortfeasor been *insured* to the same extent as the injured party. By enacting section 2902, the Legislature has also indicated a strong public policy in favor of the just compensation of accident victims. To effectuate the purposes of this remedial statute, we construe the protections of section 2902 liberally in favor of insureds and strictly against insurers. For the same reason, we construe limiting conditions in insurance policy contracts liberally in favor of insureds and strictly against insurers.

Id. at 743 (internal quotations and citations omitted) (emphasis added in original).[4]

---

[3] Under section 2902, a purchaser may reject the default protection provided in the above-quoted section so long as that rejection is made "in writing on a form provided by the insurer." 24-A M.R.S.A. § 2902(2). In this case, there is no dispute that a written rejection was not completed in connection with the two policies at issue.

[4] The Law Court cited multiple prior decisions in support of its analysis of section 2902's legislative history, including: Jipson v. Liberty Mut. Fire Ins. Co., 942 A.2d 1213, 1216 (Me. 2008); Molleur v. Dairyland Ins. Co., 942 A.2d 1197, 1201 (Me. 2008); Tibbetts v. Me. Bonding & Cas. Co., 618 A.2d 731, 734 (Me.1992); Wescott v. Allstate Ins., 397 A.2d 156, 167 (Me.1979).

For the two policies at issue in this case, the parties argue that imputing the section 2902's underinsured coverage turns first on whether the policy is "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle . . . with respect to any such vehicle registered or principally garaged in this State" and, second, on whether Dr. Frost is a "person[ ] insured . . . who [is] legally entitled to recover damages." 24-A M.R.S.A. § 2902(1).

Whether this statutory language is applicable to the policies at issue necessarily turns on an examination of the individual policy. To the extent that any applicable language in the policy is unambiguous, it "must be interpreted according to its plain meaning." Travelers Indem. Co. v. Bryant, 38 A.3d 1267, 1269 (Me. 2012) (citing Cookson v. Liberty Mut. Fire Ins. Co., 34 A.3d 1156 (Me. 2012)). A provision is deemed unambiguous if "an ordinary person in the shoes of the insured would [ ] understand that the policy did not cover claims such as those brought." Bryant, 38 A.3d at 1270 (quoting City of S. Portland v. Me. Mun. Ass'n, 953 A.2d 1128, 1130 (Me. 2008)). However, if a policy is "reasonably susceptible of different interpretations," Maine law requires that ambiguities in the policy, particularly with respect to exclusions, be resolved in favor of the insured. Id.; see also Kinney v. Maine Mut. Group Ins. Co., 874 A.2d 880, 885 (Me. 2005).

With these standards in mind, the Court turns to its examination of the relevant policies.

### B. Policy No. BOP8262829: The Business Owner's Policy

In May 2007, Lake Region Center maintained a business owner's policy (hereinafter, "BOP Policy" (ECF No. 16-1)) that covered medical and liability expenses of up to $1,000,000

per occurrence and also included commercial property insurance.[5] The liability coverage under this BOP policy included an explicit exclusion for "'bodily injury' or 'property damage' arising out of the . . . use . . . of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." (BOP Policy at Page ID 318.) However, the policy also included "hired auto liability" and "non-owned auto liability" endorsements. (Id. at Page ID 257, 262-63.) As is relevant to the pending dispute, the definition of insured for purposes of the hired and non-owned auto endorsement explicitly states:

> None of the following is an insured:
> …
> (2) Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household.

(Id. at Page ID 263.)

This explicit exclusion is not language that is reasonably susceptible to different interpretations. As a result, it must be given its plain meaning. Quite simply, even under a strict construction of the policy language just quoted, the Court readily concludes that Dr. Frost was not a "person insured" under the BOP Policy with respect to her operation of her personal vehicle. See Mayhew v. Alterra Excess & Surplus Ins. Co., No. 2:11-cv-190, 2012 WL 242770 (D. Vt. 2012) (finding president of company was not an "insured" while riding his personal motorcycle); cf. Dupere v. Liberty Mut. Fire. Ins. Co., 377 F. Supp. 2d 272, 275 (D. Me 2005) (finding plaintiff could not recover underinsured motorist benefits from his employer's business auto policy because he was driving her personal vehicle not an auto owned by the business); Seaco Ins. Co. v. Davis-Irish, 180 F. Supp. 2d 235, 236-37(D. Me 2002) (finding employee could not access uninsured motorist coverage under a business auto policy while riding in a

---

[5] As explained in Defendant's motion papers, "a business owners policy" ("BOP") . . . is an industry term commonly used to describe a commercial insurance policy that provides, in a single coverage form, both commercial property insurance and commercial general liability insurance." (Def. Mot. for Summ. J. (ECF No. 20) at 3.)

personal vehicle on business although she would have been covered had she been riding in a company auto). The Court reaches this conclusion despite the fact that Dr. Frost is undeniably legally entitled to recover damages from the May 2007 accident and, additionally, that Dr. Frost was driving her vehicle in connection with her duties at Lake Region Center.

Although the Court finds the policy language and statutory language regarding who is an insured person unambiguously excludes Dr. Frost, Defendant argues that simply finding Dr. Frost is "insured for any purpose" under the BOP Policy is enough to make her an "insured person" under section 2902. (See Def. Response (ECF No. 26) at 9.) Assuming for the sake of argument that such a finding would be sufficient to satisfy the "insured person" requirement, the Court would still not find that the BOP Policy qualifies under the definition found in 24-A M.R.S.A. § 2902(1).

By its plain language, section 2902 applies to "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle . . . with respect to any such vehicle registered or principally garaged in this State." This phrase clearly and unambiguously applies to personal auto policies and commercial auto policies.[6] It is far from clear that this "policy" language of section 2902 extends to other types of policies; particularly, policies that do not insure or reference any particular motor vehicle registered or principally garaged in Maine. (See Def. Mot. for Summ. J. at 15 (conceding that even under the hired or non-owned auto endorsement, the BOP Policy "does not contemplate coverage for particular identified vehicles"). However, assuming (without deciding), that such an extension of section 2902 is possible, the "policy" language of section 2902 is, at best, ambiguous.

---

[6] By way of example, the Court notes that Dr. Frost's personal auto policy identified three automobiles insured under the policy, including the Pontiac she was driving at the time of the May 2007 accident. (See Pl. Ex. A (ECF No. 21-1).)

9

In resolving any ambiguity in the statutory language, the Court must construe the language liberally in favor of allowing Dr. Frost the same recovery that would have been available had Brandon Lapointe (the underinsured tortfeasor) maintained similar coverage, i.e., had he been insured in the same manner and to the same extent as Dr. Frost. See Beal, 989 A.2d at 743 (explaining legislative intent of section 2902); Peters v. O'Leary, 30 A.3d 825, 828 (Me. 2011) (explaining that review of legislative intent is appropriate only when the statutory language is ambiguous). Herein lies the problem: Under the unambiguous language of the BOP policy, Dr. Frost would not be covered for such liability. Rather, as previously discussed, the language of the hired, non-owned auto endorsement states plainly that "any partner or 'executive officer'" is not any insured "for any 'auto' owned by such partner or officer or a member of his or her household." (BOP Policy at Page ID 263.)

As a result, construing any arguable ambiguity in the phrase "[a] policy insuring against liability arising out of the . . . use of any motor vehicle [that is] registered or principally garaged in this State" to include the BOP Policy would result in the injured party here receiving a *greater* recovery than the recovery that would have been available had the tortfeasor had a similar BOP policy. Because this construction would exceed the apparent intent of the Maine Legislature, the Court declines Dr. Frost's invitation to resolve any apparent ambiguity in the phrase "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle" to include the Lake Region Center BOP Policy.

Defendant has sought to bolster her argument by citing cases from other states holding that commercial general liability ("CGL") policies with similar hired and non-owned auto liability endorsements can trigger statutory coverage for uninsured/underinsured motorists. (See Def. Mot. for Summ. J. (ECF No. 17) at 8-9 (citing Harrington v. Am. Family Mutual Ins. Co,

10

773 N.E.2d 98 (Ill. 2002); Selander v. Erie Ins. Group, 709 N.E.2d 1161 (Ohio 1999); St. Paul Fire & Marine Ins. Co. v. Gilmore, 812 P.2d 977 (Ariz. 1991)).[7] In the Court's assessment, these cases are readily distinguishable from the case now before the Court and do not support the extension of legislative intent necessary to mandate underinsured coverage in the absence of similar liability coverage.

Having found that Dr. Frost is not an "insured person," as that term is used in section 2902, and that the Lake Region Center's BOP Policy does not fall under the policy definition found in section 2902, the Court concludes that underinsured motorist coverage is not included in the BOP Policy as a matter of Maine law.

### C. Policy No. CU8263929: The Commercial Umbrella Policy

In addition to the BOP Policy, Peerless Insurance Company had also issued a commercial umbrella policy naming Lake Region Center as the insured (ECF No. 16-2).[8] This umbrella policy listed in its "schedule of underlying insurance" the above-discussed BOP policy (Policy No. 8262829) and an employers' liability policy (Policy No. WC 8263329). The schedule lists no auto policy and explicitly notes that such policies are "EXCLUDED." (Page ID 390.) The Automobile Liability – Follow Form (Page ID 392) further excludes coverage for any bodily injury arising out of the use of any auto. The only exception to this explicit exclusion is if

---

[7] The Court notes that the BOP policy coverage at issue in this case is more comprehensive than a standard CGL policy and includes coverage for business property of Lake Region Center. See generally Middlesex Mut. Assurance Co. v. Fish, 738 F. Supp. 2d 124, 132 (D. Me. 2010) (generally explaining the "dovetail theory" of coverage between CGL and automobile policies).

[8] Dr. Frost would also be considered an "insured" under the language of policy "but only with respect to the conduct of your business" or her duties as an executive officer. (Page ID 414-15 (defining who is an insured for purposes of the policy).)

"scheduled underlying insurance" (such as the listed BOP Policy) is found to apply to the injury. Even under these circumstances, the language of the policy indicates:

> [T]his insurance does not apply to:
> (1) Motor vehicle no-fault law, first party physical damage coverage, personal injury protection coverage or other law or coverages similar to any of the foregoing; or
> (2) Motor vehicles uninsured or underinsured motorists law, unless an Uninsured/Underinsured Motorist Coverage – Follow Form endorsement is attached to this policy.

(Page ID 392.) The policy again excludes "Motor Vehicle Laws and Coverages," including "[m]otor vehicles no-fault law, first party physical damage coverage, personal injury protection coverage, uninsured motorists or underinsured motorists law," in its general exclusions. (Page ID 409.)

Given the Court's analysis of the underlying BOP Policy, the Court readily concludes that the Commercial Umbrella policy is unambiguous regarding the issue of uninsured/underinsured motorist coverage. In short, the Court finds that Policy. No. 8262829 was not "[a] policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle [that was] registered or principally garaged in this State." 24-A M.R.S.A. § 2902(1).[9]

The parties had additionally briefed the issue of the amount of coverage available if section 2902 were found to apply to either of the policies at issue, the Court need not address those arguments given its holding that section 2902 does not impute underinsured motorist coverage to either the BOP Policy or the commercial umbrella policy.

---

[9] The Court notes that this case does not involve an individual umbrella policy. Rather, the language and structure of the Lake Region Center commercial umbrella policy, combined with lack of coverage under the BOP Policy, dictate this result here. The Court need not and, as a result, does not state any opinion on whether section 2902 generally applies to umbrella policies issued in Maine. See, e.g., Ins. Co. of Pennsylvania v. Johnson, 987 A.2d 276, 282 (Vt. 2009) (answering as a certified question whether Vermont's uninsured/underinsured motorist statute requires umbrella policies to provide uninsured/underinsured motorist coverage and noting "a substantial split of authority nationwide" on this question).

**IV.     CONCLUSION**

For the reasons just stated, the Court DENIES the Motion for Summary Judgment by Defendant/Counterclaim Plaintiff (ECF No. 17) and GRANTS the Motion for Summary Judgment by Plaintiff/Counterclaim Defendant (ECF No. 20).  As a result, judgment shall enter in favor of Plaintiffs Peerless Indemnity Insurance Company and Peerless Insurance Company on all claims.

SO ORDERED.

/s/ George Z. Singal<br>United States District Judge

Dated this 16th day of October, 2012.